# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES R. WATKINS, AS RECEIVER FOR KENNEDY SHIP & REPAIR, L.P., Plaintiff, | § § § § § | |
| v. | § § | CIVIL ACTION NO. 3:06-cv-00388 |
| KENNEDY SHIP & REPAIR, L.P., LOUIS THOMPSON, AND DRANSON CHARLIE PHAM, *IN PERSONAM*, AND F/V LITTLE KYLE, *IN REM*, Defendants. | § § § § § § | |

## MEMORANDUM & ORDER

Before the Court are cross-motions for summary judgment, one filed by Plaintiff James R. Watkins as receiver for Kennedy Ship & Repair, L.P. (the "Receiver" or "Plaintiff") (Doc. No. 31), and the other jointly filed by Defendants Kennedy Ship & Repair L.P. ("Kennedy Ship") and Defendant Louis Thompson ("Thompson") (referred to collectively as "Defendants") (Doc. No. 33).[1] After considering the Motions, the responses and replies thereto, all other filings, and all relevant law, the Court finds that summary judgment should be entered for Defendants.

## I.      BACKGROUND

This case is an action to determine ownership of the F/V Little Kyle. The parties have engaged in extensive summary judgment briefing to clarify the issues. The first

---

[1] Defendant Dranson Charlie Pham has not filed a motion for summary judgment. Instead, as explained in his Response to Plaintiff's Motion for Summary Judgment (Doc. No. 20), Pham's interests are largely congruent with the Receiver's, and he therefore supports the position of the Receiver and opposes the position of Defendants as to ownership of the Little Kyle.

round of summary judgment motions (Doc. Nos. 16, 18) was denied by the Honorable

Samuel Kent. After the case was reassigned to the undersigned judge, the parties urged

the Court to accept supplemental motions for summary judgment, and the Court

subsequently received the instant Motions.

While the central question of this case is simply stated—who owns the F/V Little

Kyle?—the relevant facts are not. Kennedy Ship originally contracted to build the Little

Kyle, a trawler, for Defendant Dranson Charlie Pham ("Pham"). During the course of

performance of that contract, a dispute arose that caused Pham to file suit in Texas state

court, and eventually to win a judgment in the amount of approximately $150,000,

including attorney's fees. (*See* Compl., Doc. No. 1, Ex. A.) In addition to the monetary

award, that judgment rendered Pham's "Pre-Judgment Notice of Claim" against the Little

Kyle "of no further force or effect." (Compl., Doc. No. 1, Ex. A.) After obtaining this

judgment, Pham filed another notice of claim on January 4, 2005 against the Little Kyle

in an attempt to secure his state court judgment. (Defs.' Joint Mot. Summ. J., Doc. No.

18, Ex. 2.) It is uncontested, however, that Pham failed to undertake conduct that would

perfect the claim, such as obtaining a writ of execution or arranging for the vessel's arrest

and seizure, and that therefore this second notice of claim was ineffective to place a lien

on the vessel. As a result, during the time period relevant to this case the Little Kyle's

title was encumbered by only two liens totaling approximately $343 thousand, held by

Frost Bank and Mustang Power Systems, respectively. (Defs.' Joint Mot. Summ. J., Doc.

No. 18, Ex. 3 & 4.)

In April 2005, the Little Kyle was allegedly sold to Thompson. (Aff. of Louis

Thompson, Doc. No. 34, at 2.) According to Defendants, Thompson bought the vessel

for $450 thousand, paying the money to Kennedy Ship's sister company, Kennedy Construction, Inc. ("Kennedy Construction"), pursuant to Kennedy Ship's directions. (Thompson Aff., Doc. No. 34, at 2.)   Kennedy Construction subsequently used the proceeds of the sale to retire what remained of Frost Bank's lien on the Little Kyle, and forwarded the remaining $195 thousand to Kennedy Ship on July 28, 2005. (Affidavit of Chris Kennedy, Doc. No. 19, Ex. A, at 2.)  Kennedy Ship then used the $195 thousand to satisfy the lien held by Mustang Power. (Kennedy Aff., Doc. No. 19, Ex. A, at 2.)

While no written contract is included in the summary judgment record, Defendants rely on various other documents to prove the existence of the sale.  First, they rely on a Certificate of Documentation ("the Certificate") (Complaint, Doc. No. 1, Ex. E) that purports to show that ownership of the Little Kyle transferred from Kennedy Ship to Thompson.  The Certificate, which is a standard United States Coast Guard form, is signed by Thompson and Chris Kennedy, a limited partner of Kennedy Ship and President of Bayou Leasing, Inc., which is the general partner of Kennedy Ship (Kennedy Aff., Doc. No. 19, Ex. A, at 1-2).  On the Certificate, Mr. Kennedy identifies himself as "Owner" of the vessel on the Certificate, a designation that Defendants admit is incorrect insofar as Kennedy Ship, not Mr. Kennedy, owned the Little Kyle before the alleged sale. The Certificate also includes various standard notations, including the statement that "The principal purpose[] for which this instrument is to be used [is] . . . to provide a record . . . of the sale or other change in ownership of a vessel which is documented, will be documented, or has been documented . . . ."  (Complaint, Doc. No. 1, Ex. E, at 2.) However, as Plaintiff points out, it also states, "The certificate . . . is not conclusive evidence of title in any proceeding where ownership is in issue. . . . The sale or transfer

section below is provided for convenience only." (Complaint, Doc. No. 1, Ex. E, at 2.) Second, Defendants rely on a one-sentence "Bill of Sale," dated May 2, 2005 and signed by Mr. Kennedy, that reads, "Kennedy Construction has been paid in full the sum of $450,000.00 USD for a 105ft X 27ft trawler[.]" (Thompson Aff., Doc. No. 34, Ex. 2.) Although this bill of sale was first entered into the summary judgment record in support of Defendants' most recent brief, and although Defendants have offered no explanation for why the document was not produced earlier in the lawsuit, the evidence has been on file with the Court for two months, during which time Plaintiff has neither responded to that brief nor otherwise attempted to rebut the evidence submitted with it.

Third, Defendants rely on various bank records purporting to document the money transfers described above. Plaintiff argues that while the bank records do show transactions in the amounts that Defendants have described, they are not sufficient to establish the sale of the Little Kyle. Specifically, Plaintiff notes that the $450 thousand was paid to a third party, Kennedy Construction, and not to the owner of the Little Kyle; that the $450 thousand was paid to Kennedy Construction roughly seven weeks before the alleged sale; and the records do not establish from whom Kennedy Ship received the deposit of $195 thousand. (Pl.'s Mot., Doc. No. 31, at 5-6.)

Fourth, Defendants rely on various letters and emails to show that a sale took place, including letters to Thompson from Ocean Marine Brokerage Services ("Ocean Marine"), whom Thompson eventually paid to broker his purchase of the Little Kyle. (Thompson Aff., Doc. No. 34, Ex. 3, 4, & 5.) The letters from Ocean Marine make specific references to Kennedy Ship's sale of the Little Kyle to Thompson and demand payment of a commission for brokering the transaction. As with the Bill of Sale, these

- 4 -

documents were first offered in Defendants' most recent brief, and have not been rebutted by Plaintiff. Ocean Marine's role in the transaction is corroborated by letters from Thompson to Kennedy instructing the latter to provide any documentation that Ocean Marine would need to effect transfer of the Little Kyle to the Bahamas. (Defs.' Mot., Doc. No. 33, Ex. 6 & 8.) The correspondence also includes a letter from the United States Department of Homeland Security's National Vessel Documentation Center ("NVDC") to Ocean Marine explaining that, due to the existence of Pham's (ineffective) second notice of claim and Mr. Kennedy's mistaken identification of himself as the owner of the Little Kyle, the NVDC would not be able to grant Ocean Marine's apparent request to register the vessel in the Bahamas. (Defs.' Mot., Doc. No. 33, Ex. 9.)

Finally, Defendants rely on sworn affidavits from both Thompson and Kennedy attesting to the veracity of their position and evidence. As described herein, Plaintiff has challenged the sufficiency of this evidence as proof of a sale of the Little Kyle. It has also submitted a "General Index or Abstract of Title" from the NVDC for the Little Kyle, dated June 6, 2006, that shows Kennedy Ship as the owner of the Little Kyle. (Pl.'s Motion Summ. J., Doc. No. 16, Ex. C.)

On August 2, 2005, Kennedy Ship was placed into receivership, and shortly thereafter, Plaintiff, hoping to sell the Little Kyle and distribute the proceeds to Kennedy Ship's creditors, filed this action to determine ownership of the vessel.

## II.    LEGAL STANDARDS

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law

based on the evidence thus far presented.  FED. R. CIV. P. 56(c).  Summary judgment is

proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of

Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).  A genuine issue of

material fact exists if a reasonable jury could enter a verdict for the non-moving party.

*Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The Court

views all evidence in the light most favorable to the non-moving party and draws all

reasonable inferences in that party's favor.  *Id.*  Because the Court today orders the entry

of summary judgment for Defendants, all facts will be viewed in the light most favorable

to Plaintiff.


## III.     ANALYSIS

Plaintiff makes three arguments to support his position:  first, that there was never

a contract for the sale of the Little Kyle; second, that if there was such a contract, it is

unenforceable because the agreement was not reduced to a writing; and third, that even if

the contract does not violate the statute of frauds, ownership of the Little Kyle never

transferred to Thompson because the legal title to the vessel did not transfer.  Each

argument will be analyzed in turn.

### A.      Did Kennedy Ship Sell the Little Kyle to Thompson?

In support of his argument that there was never a contract for the sale of the Little

Kyle, Plaintiff highlights various ambiguities in the evidence that, he claims, prevents the

Court from entering summary judgment for Defendant.  As described above, Plaintiff

notes that the Certificate, which purports to memorialize the sale of the Little Kyle, contains language specifically stating that it is not conclusive proof of ownership.  He also notes that, while the bank records establish that Kennedy Construction may have satisfied some of the liens outstanding on Little Kyle, they do not establish the sale of the vessel.

Plaintiff is, without question, correct to point out the deficiencies of the evidence he cites, even more so given that the Court, in deciding Defendants' Motion, must view this evidence in the light most favorable to Plaintiff.  But Plaintiff fails to address other crucial pieces of evidence in the summary judgment record.[2]  Most significantly, the bill of sale, dated roughly seventeen days after Thompson transferred $450 thousand to Kennedy Construction, specifically indicates that a contract existed to purchase a ship trawler of exactly the Little Kyle's dimensions.  In addition, the sworn affidavits from Thompson and Kennedy, although clearly self-interested, conform to the evidence in the summary judgment record and generally support the existence of a contract.  The correspondence between Thompson and Ocean Marine, which Plaintiff again has not addressed, also tends to support the existence of an agreement to purchase the Little Kyle. Those letters, combined with Thompson's affidavit, show that an ostensibly disinterested third party believed that Thompson purchased the Little Kyle, and that the third party was willing to invoice Thompson for a $10 thousand commission, send demand letters, and even threaten lawsuits on the basis of that belief.  Thompson's uncontested affidavit

---

[2] As discussed above, some of Defendants' most crucial summary judgment evidence was offered as an attachment to the two most recent filings made in the case (Doc. Nos. 33 & 34), both of which were filed after Plaintiff's most recent brief (Doc. No. 31).  Plaintiff has nonetheless had ample opportunity to respond to the new evidence, and has not done so:  as a formal matter, Docket Number 33 was captioned as a "Response and Cross-Motion," thereby inviting a further response to the additional evidence it offered; as a practical matter, the additional evidence was offered more than two months ago.

further states that he in fact paid the commission (Thompson Aff., Doc. No. 34, at 3), a claim that is supported by those Ocean Marine correspondences showing that Ocean Marine assisted Thompson in attempting to register the Little Kyle in Bermuda.

Moreover, the evidence that Plaintiff does address provides stronger evidence of a contract than Plaintiff suggests, and perhaps more importantly, does not affirmatively support Plaintiff's position.  First, the Certificate unquestionably provides some evidence of a sale.  The notation Plaintiff cites precludes the document from being "conclusive" evidence of a sale, but it does not preclude it from being *any* evidence of a sale.  Plaintiff also ignores the other relevant notation on the Certificate, relied on by Defendants, stating that one of the document's "principal" purposes is to provide a record of a sale. Read together, these two notations clearly leave open the possibility that the Certificate can be evidence of a sale.  Second, while the Plaintiff characterizes the NVDC's rejection of Thompson and Ocean Marine's request to register the Little Kyle in Bermuda as evidence of no sale having occurred, it is in fact evidence of the contrary: were there no sale, Thompson and Ocean Marine would have had no occasion to attempt such a registration.

It is true that the NVDC's General Index or Abstract of Title names Kennedy Ship, and not Thompson, as owner of the Little Kyle.  Plaintiff believes that this fact shows that no sale of the vessel ever occurred.  The Court agrees that, if the summary judgment record were silent or unclear as to the reason the alleged sale had not been documented with the NVDC in a manner sufficient to change the purported owner on the Abstract of Title, this NVDC document would be highly probative of the question of whether there had, in fact, been a sale of the vessel.  In this case, however, the summary

judgment evidence contains an explanation of the discrepancy:  the Certificate contained the technical defects discussed above, and Pham's (ineffective) second notice of claim had created the appearance of a cloud on the Little Kyle's title.  As a result, the NVDC could not alter its registry.  "True ownership of a vessel," however, "is not dependent upon its registry."  *Saint Paul Fire & Marine Ins. Co. v. Vest Transp. Co.*, 666 F.2d 932, 938 (5th Cir. 1981) ("[A] ship's documentation of title, while prima facie evidence of ownership, is not conclusive and that true ownership of a vessel is not dependent upon its registry." (citations omitted)).  Here, the summary judgment evidence clearly and unambiguously explains why there was a discrepancy between the Little Kyle's ownership and its registry, rendering the evidence relied on by Plaintiff of little probative value as to the question of whether, in fact, the Little Kyle had been sold.

The standards for forming a contract under Uniform Commercial Code ("UCC"), which have been adopted by Texas, are extremely lenient:  UCC § 2-204(1) states, "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract"; § 2-204(3) states, "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."  Tex. Bus. & Com. Code Ann. § 2.204(a), (c) (Vernon Supp. 2007).  Viewing the evidence just recited in light of the UCC's standards, the Court finds as a matter of law that no genuine issue of material fact exists with regard to whether there was a sale of the Little Kyle, and that no reasonable jury could fail to find that such a sale occurred.

**B.     Does the Contract Comport With the Statute of Frauds?**

Plaintiff's second argument maintains that any contract between Kennedy Ship and Thompson for the sale of the Little Kyle is unenforceable under Texas' statute of frauds because it is not reduced to a writing.   (Pl.'s Mot., Doc. No. 31, at 4.)   As discussed above, however, Plaintiff's argument does not address the bill of sale, which is clearly "sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker," as required by UCC § 2-201(1).   Tex. Bus. & Com. Code Ann. § 2.201(a). Alternatively, the bill of sale, combined with the affidavits of Thompson and Kennedy, is definitive—and uncontested—evidence that Kennedy "received and accepted" payment for the vessel, as required by the exception to the statute of frauds set out in UCC § 2-201(c)(3).   Tex. Bus. & Com. Code Ann. § 2.201(c)(3) ("A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable . . . with respect to goods for which payment has been made and accepted . . . .")   The Court therefore finds as a matter of law that no genuine issue of material fact exists with regard to whether the contract is enforceable, and that no reasonable jury could fail to find that the contract satisfies the statute of frauds.

**C.     Did Ownership of the Little Kyle Transfer to Thompson?**

Plaintiff's third argument is that, even if a sale of the Little Kyle did occur, legal title did not pass to Thompson, and therefore ownership of the vessel is still vested in Kennedy Ship.   It is true, as Plaintiff argues, that for Thompson to prevail, he must show legal title to the vessel, not just a superior equitable title or interest.   *See J.K. Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 1*, 625 F.2d 44, 47-48 (5th Cir.

1980).  Plaintiff's position, citing the *J.K. Jones*, is that without delivery of either the

fishing vessel or the "necessary documents," legal title did not vest in Thompson.  (Pl.'s

Motion, Doc. No. 31, at 7.)

> Texas' Business and Commercial Code § 2.401(c) reads, in full:
>
> Unless otherwise explicitly agreed where delivery is to be made
> without moving the goods,
>
> (1) if the seller is to deliver a tangible document of title, title
>     passes at the time when and the place where he delivers such
>     documents and if the seller is to deliver an electronic document
>     of title, title passes when the seller delivers the document; or
>
> (2) if the goods are at the time of contracting already identified and
>     no documents are to be delivered, title passes at the time and
>     place of contracting.

This section therefore establishes a default rule for cases such as this one, where the

agreement is silent as to when legal title shall pass, where delivery is to be made without

moving the goods, and where no provision is made for the delivery of a document of title:

if the goods are identified to the parties at the time of contracting, then title passes

immediately.

In this case, the evidence overwhelmingly indicates that the Little Kyle was

identified at the time of contracting:  Thompson's uncontested affidavit describes his

inspection of the vessel and attests to the fact that he agreed to purchase that specific

vessel (Thompson Aff., Doc. No. 34, at 2); Kennedy's affidavit alleges that the sale was

specifically of the Little Kyle (Kennedy Aff., Doc. No. 19, Ex. A, at 2); and the

correspondence between Ocean Marine and Thompson suggests that the sale was, indeed,

of the Little Kyle (Thompson Aff., Doc. No. 34, Ex. 3, 4, & 5).  Moreover, there is no

evidence whatsoever that the agreement between Kennedy Ship and Thompson specified

that any tangible document of title, or any other "necessary documents" (Pl.'s Motion,

Doc. No. 31, at 7), were to be delivered to Thompson after the sale.  Finally, the fact that Thompson and Kennedy Ship later endeavored to register the vessel in Bermuda is insufficient to show, or even suggest, that such registration was a precondition under the contract for the passing of legal title sufficient to invoke § 2.401(c)(1) instead of § 2.401(c)(2).

This case is therefore very similar to *J.K. Jones*.  In that case, as here, the contract for the sale of a vessel had identified the vessel in question at the time of contracting, but the contract did not explicitly provide for when title would pass, nor did it require the delivery of any specific documents of title.  The Fifth Circuit, interpreting Florida's version of UCC § 2-401, which was identical in all relevant respects to the statute analyzed here,[3] held that legal title had vested in the purchaser at the time the contract was executed.  *J.K. Jones*, 625 F.2d at 49 ("[T]he sale . . . was in no way contingent or dependent upon delivery of a document of title. . . . [The vessel] was identified to the contract when it was executed . . . and therefore title passed to [the purchaser] at the time of contracting . . . ." (internal quotations omitted)).

The Court therefore finds as a matter of law that no genuine issue of material fact exists with regard to whether legal title, and therefore ownership, passed to Thompson

---

[3] The Florida statute interpreted in *J.K. Jones* read as follows:

> Unless otherwise explicitly agreed where delivery is to be made without moving the goods,
>
> (a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or
>
> (b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time of contracting.

625 F.2d at 48.

prior to the time that Kennedy Ship was placed into receivership. It did, and no reasonable jury could find to the contrary.

## IV.    CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 31) is **DENIED**, and the Motion for Summary Judgment filed by Defendants Kennedy Ship and Thompson (Doc. No. 33) is **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 24th day of April, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.